IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| P-AMERICAS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) No. 13 C 8808 |
| CENTRAL STATES SOUTHEAST | ) |
| AND SOUTHWEST AREA PENSION | ) |
| FUND, and ARTHUR H. BUNTE, JR., | ) |
| as Trustee, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff P-Americas, LLC ("Pepsi") brings this action for declaratory judgment to resolve a dispute regarding whether Pepsi has a contractual obligation to contribute to Defendant Central States, Southeast and Southwest Area Pension Fund (the "Fund") for employees at its Massillon, Ohio facility beyond April 1, 2013. Before the Court is Pepsi's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (*See* R. 20.) For the following reasons, the Court denies Pepsi's motion.

## BACKGROUND

Plaintiff Pepsi is an indirect wholly-owned subsidiary of PepsiCo, Inc. and a successor-in-interest to Pepsi-Cola General Bottlers of Ohio, Inc. (*See* R. 1, Compl. ¶ 5.)[1] Pepsi qualifies as an employer and a party-in-interest within the meaning of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141 *et seq.* (*See* Compl. ¶ 5; R. 12, Counterclaim ¶ 8.) The Fund is an

---

[1] Citations to the Complaint or Counterclaim refer collectively to the cited allegations and the responding party's answer. For clarity, the Court uses this citation form only for facts that are undisputed.

1

employee benefit plan and trust funded primarily by contributions from participating employers pursuant to collective bargaining agreements with their local unions. (*See* Counterclaim ¶¶ 4-5.) The Fund qualifies as a multiemployer pension fund under ERISA §§ 3(37) and 4001(a)(3). (*See* Compl. ¶ 6.)

Pepsi, as successor-in-interest to Pepsi-Cola General Bottlers of Ohio, Inc., and General Truck Drivers and Helpers Teamsters Local Union No. 92 ("the Union") are parties to a collective bargaining agreement effective as of January 16, 2008 (the "Old CBA"). (*See* Compl. ¶ 8; *see also* R. 4, Compl. Ex. A, Old CBA.) The Old CBA obligated Pepsi to contribute to the Fund on behalf of employees covered under the Old CBA for the duration of the agreement. (*See* Counterclaim ¶ 10; *see also* Old CBA Art. 28.) Article 37 of the Old CBA provided that the agreement

> shall be in full force from January 16, 2008, to and including January 19, 2013, and shall continue in full force and effect from year to year thereafter unless written notice of desire to cancel or terminate the Agreement is served by either party upon the other at least sixty (60) days prior to the date of expiration.

(*See* Old CBA at 31.)

On November 1, 2012, the Union sent Pepsi a letter providing notice of its "desire, intention and election to negotiate changes or revisions in the [Old CBA]." (*See* Compl. Ex. B, 11/1/2012 Letter.) The letter stated:

> In accordance with Article 37 of our Collective Bargaining Agreement with your firm, and pursuant to the Labor Management Relations Act, we are hereby giving not less than sixty (60) days notice of the Union's desire, intention and election to negotiate changes or revisions in the present collective bargaining agreement.
>
> We are also hereby offering to meet and negotiate with you on the terms of a new agreement at a mutually agreeable time and place. We would appreciate your earliest advice as to when and where such negotiations might be held.

(*See id.*) Pepsi and the Union subsequently began negotiating a new collective bargaining agreement (the "New CBA"). (*See* Compl. ¶ 14.) Although Pepsi and the Union began

2

negotiating sometime before January 19, 2013, they did not agree to the terms of the New CBA until March 2013.  (*See* Compl. ¶ 14.)

On March 15, 2013, Pepsi and the Union entered a Memorandum of Agreement regarding their agreement in principle.  The Memorandum of Agreement provided that the Old CBA would expire on April 1, 2013, and the New CBA would take effect on April 2, 2013.  (*See id.* ¶¶ 15-16.)  It also provided that Pepsi would no longer be obligated to contribute to the Fund for the Massillon location under the New CBA.  (*Id.* ¶ 16.)  In accordance with Article III of the Trust Agreement governing the Fund, Pepsi sent a copy of the Memorandum of Agreement to the Fund on March 19, 2013, informing the Fund that, as of April 2, 2013, Pepsi would cease making contributions to the Fund for the Massillon location.  (*See* Compl. ¶¶ 18, 20; *see also id.* at Ex. E, 3/19/2013 Letter.)  Pepsi also sent the Fund a copy of the New CBA once it was fully executed.  (*See id.* ¶ 21; *see also id.* at Exs. F-G.)

In Pepsi's March 19, 2013 letter to the Fund, Pepsi requested that the Fund confirm that Pepsi's obligation to make contributions for the Massillon location would cease effective April 2, 2013.  (*See* 3/19/2013 Letter.)  On April 19, 2013, the Fund informed Pepsi that it planned to present Pepsi's request to the Fund's Trustees during the Trustees' May 2013 meeting and asked Pepsi to provide any materials it wanted the Trustees to consider by May 1, 2013.  (*See* Counterclaim ¶ 25.)  Pepsi responded on April 29, 2013, enclosing copies of the Union's November 1, 2012 letter and the executed New CBA and referring the Fund to the Memorandum of Agreement it had previously submitted.  (*See id.* ¶ 26.)

During the Trustees' May 15, 2013 meeting, the Trustees found that the Union's November 1, 2012 letter was not a notice "of desire to cancel or terminate" the Old CBA and the Old CBA, therefore, remained in effect until January 19, 2014 pursuant to the evergreen clause

3

in Article 37. (*See id.* ¶ 29.) The Trust Agreement governing the Fund and the Plan Document adopted by the Trustees required Pepsi to contribute to the Fund for the "entire term" of its collective bargaining agreement. (*See id.* ¶¶ 13-16.) As a result, the Trustees concluded that Pepsi's obligation to contribute to the Fund for the Massillon location would continue until January 19, 2014. (*See id.* ¶ 29.) Pepsi, however, has refused to make contributions for the Massillon facility for work performed after April 1, 2013. (*See id.* ¶ 22.)

Pepsi filed the present suit against the Fund on December 10, 2013, seeking a declaratory judgment that Pepsi has no obligation to contribute to the Fund for work performed from April 2, 2013 to January 19, 2014. (*See* Compl. ¶ 1.) The Fund answered the Complaint on January 10, 2014, admitting most of Pepsi's factual allegations but disputing Pepsi's assertion that it has no obligation beyond April 2, 2013 to contribute to the Fund for its Massillon location. (*See* R. 11, Answer to Compl.)[2] The Fund also filed a counterclaim, seeking the unpaid contributions it contends Pepsi owes for work performed from April 2, 2013 to January 19, 2014, plus interest and attorneys' fees and costs. (*See* Counterclaim at 10.) Pepsi answered the Counterclaim on February 3, 2014. (*See* R. 15, Answer to Counterclaim.) After the pleadings closed, Pepsi moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (*See* R. 20, Pl. Mot.)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed but early enough not to delay trial. *See* Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) 'is

---

[2] The Fund filed an Amended Answer to the Complaint on April 4, 2014. The Amended Answer contains only one substantive change from the Fund's initial Answer (*compare* R. 48, Am. Answer ¶ 14 *with* Answer ¶ 14), and does not change the Court's determination of Pepsi's motion for judgment on the pleadings.

4

designed to provide a means of disposing of cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court may take judicial notice.'" *Archer Daniels Midland Co. v. Burlington Ins. Co. Grp.,* No. 10-CV-1533, 2011 WL 1196894, at *2 (N.D. Ill. Mar. 29, 2011) (quoting *Cincinnati Ins. Co v. Contemporary Distrib., Inc.,* 2010 No. 09-CV2250, 2010 WL 338943, at *2 (N.D. Ill. Jan. 26, 2010)). Generally, courts apply the same legal standard to Rule 12(c) motions for judgment on the pleadings as they apply to Rule 12(b)(6) motions to dismiss. *See Adams v. City of Indianapolis,* 742 F.3d 720, 727-28 (7th Cir. 2014). When a party seeks to use a Rule 12(c) motion "to dispose of the base on the underlying substantive merits," however, "the appropriate standard is that applicable to summary judgment, except that the court may consider only the contents of the pleadings." *Alexander v. City of Chicago,* 994 F.2d 333, 336 (7th Cir. 1993). In these cases, courts must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the non-moving party. *See id.*; *see also Emergency Servs. Billing Corp., Inc. v. Allstate Ins. Co.,* 668 F.3d 459, 464 (7th Cir. 2012). A court will grant a motion for judgment on the pleadings only if "no genuine issues of material fact remain to be resolved and . . . the [moving party] is entitled to judgment as a matter of law." *See Alexander,* 994 F.2d at 336.

## ANALYSIS

Section 515 of ERISA provides that an employer "who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. There is no dispute that the Old CBA obligated Pepsi to make contributions to the Fund for its

Massillon location. There is also no dispute that the New CBA does not require Pepsi to make these contributions. The only question is *when* the Old CBA terminated and the New CBA took effect.

Pepsi claims that the Old CBA terminated on April 1, 2013 and the New CBA took effect on April 2, 2013, as stated in its Memorandum of Agreement with the Union. The Fund, on the other hand, claims that neither Pepsi nor the Union provided proper notice of termination of the Old CBA until March 2013, and, therefore, the Old CBA continued in effect until January 19, 2014 under the Old CBA's evergreen clause. Before the Court can resolve this dispute, it must decide the level of deference, if any, to give to the Trustees' determination that Pepsi's obligation to contribute to the Fund for the Massillon location did not terminate on April 1, 2014 and would continue until January 19, 2014.

## I. Standard of Review[3]

### A. Arbitrary and Capricious Review Applies

The Supreme Court considered the appropriate standard of review for ERISA denial of benefit claims in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1988). Noting that "ERISA abounds with the language and terminology of trust law," the Supreme Court found that trust law should guide the determination of the appropriate standard of review for denial of benefit claims. *See id.* at 111. Under general trust principles, a deferential standard of review applies when a trustee exercises discretionary powers. *Id.* (citing Restatement (Second) of Trusts § 187 (1959)). The terms of the trust may give the trustee discretionary power to resolve disputes or construe disputed or doubtful terms, and in those circumstances, courts will not disturb the trustee's interpretation as long as it is reasonable. *See id.* Put

---

[3] In deciding the appropriate standard of review, the Court has considered the parties arguments in their briefs on the Fund's motion for summary judgment, which both parties incorporated into their briefs on Pepsi's motion for judgment on the pleadings.

6

differently, "[w]hen trustees are in existence, and capable of acting, a court of equity will not interfere to control them in the exercise of a *discretion vested in them by the instrument* under which they act." *Id.* (emphasis in original) (quoting *Nichols v. Eaton,* 91 U.S. 716, 724-25, 23 L. Ed. 2d 254 (1875)); *see also Central States, Se. & Sw. Areas Pension Fund v. Central Transport, Inc.,* 472 U.S. 559, 568, 105 S. Ct. 2833, 2840, 86 L. Ed. 2d 447 (1985)) ("The trustees' determination that the trust documents authorize their access to the records here in dispute has significant weight, for the trust agreement explicitly provides that 'any construction [of the agreement's provisions] adopted by the Trustees in good faith shall be binding upon the Union, Employees, and Employers.'"). Relying on these principles, the Supreme Court held that courts must review an ERISA fiduciary's decision to deny benefits "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case an arbitrary and capricious standard of review applies. *Id.* at 115, 109 S. Ct. 948, 103 L. Ed. 2d 80; *see also Schultz v. Aviall, Inc. Long Term Disability Plan,* 670 F.3d 834, 836-37 (7th Cir. 2012).

The Supreme Court limited its analysis in *Firestone* to denial of benefit claims and expressed no view on the appropriate standard of review under other provisions of ERISA. *See Firestone Tire & Rubber Co.,* 489 U.S. at 108, 109 S. Ct. 948, 103 L. Ed. 2d 80. Other courts, including the Seventh Circuit, however, have applied *Firestone*'s analysis outside the denial of benefits context. *See, e.g., Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Constr. Corp.,* 258 F.3d 645, 653 (7th Cir. 2001) (arbitrary and capricious standard applied to trustees' determination regarding interest and penalties owed on delinquent contributions where the plan provided the trustees the power to construe provisions of the collective bargaining agreement); *White v. Sundstrand Corp.,* 256 F.3d 580, 584 (7th Cir. 2001) (applying arbitrary

7

and capricious standard to review of fiduciary's interpretation of the amount of pension benefits due under the plan); *Green v. UPS Health & Welfare Package for Retired Emps.,* 746 F. Supp. 2d 921, 927 (N.D. Ill. 2009) (arbitrary and capricious standard applied to review of trustees' interpretation of the summary plan description to allow the collection of additional contributions before the expiration of the collective bargaining agreement). Courts in this District, moreover, apply the *Firestone* analysis in actions to recover delinquent employer contributions under ERISA § 515. *See Suburban Teamsters of N. Ill. Welfare & Pension Funds v. Moser,* 867 F. Supp. 665, 670-71 (N.D. Ill. 1994); *Central States, Se. & Sw. Areas Pension Fund v. Waste Mgmt. of Mich.,* 268 F.R.D. 312, 315-16 (N.D. Ill. 2010); *Central States, Se. & Sw. Areas Pension Fund v. Gateway Foods of Twin Ports,* 951 F. Supp. 732, 736 (N.D. Ill. 1996); *see also Wisconsin UFCW Unions & Employers Health Plan v. Woodman's Food Market, Inc.,* 348 F. Supp. 2d 1005, 1007-08 (E.D. Wis. 2004).

Accordingly, if the relevant documents grant the trustees discretionary authority to resolve disputes regarding employer contributions, courts in this District will review trustees' determinations that an employer owes additional contributions under an arbitrary and capricious standard. *See Moser,* 867 F. Supp. at 670 ("Because [the collective bargaining agreement] gives the trustees discretionary authority to resolve disputes as to employer contributions, the trustees' determination that contributions were due and owing . . . under the agreement will be reviewed under an arbitrary and capricious standard."); *see also Woodman's Food Market,* 348 F. Supp. 2d at 1007-08; *Waste Mgmt. of Mich.,* 268 F.R.D. at 315-16; *Gateway Foods of Twin Ports,* 951 F. Supp. at 736. If the documents do not grant the trustees discretionary authority to decide matters related to employer contributions, however, *de novo* review applies. *See, e.g., Moser,* 867 F. Supp. at 670. "In order to lower the level of judicial review from *de novo* to arbitrary and

capricious, the plan should clearly and unequivocally state that it grants discretionary authority" to the fiduciary to make such decisions. *See Semien v. Life Ins. Co. of N. Am.,* 436 F.3d 805, 810 (7th Cir. 2006) (internal quotations omitted).

In this case, the Trust Agreement governing the Fund obligates Pepsi and other participating employers to remit continuing and prompt contributions to the Fund as required by the applicable collective bargaining agreement to which the employer is a party. (*See* Tr. Agmt. at art. III, § 1.) The Trust Agreement gives the Trustees power to demand and collect employer contributions and to take steps that the Trustees, in their discretion, deem in the best interest of the Fund to collect or preserve those assets. (*See id.* at art. III, § 4.) The Trust Agreement also grants the Trustees broad discretionary and final authority to decide "[a]ll questions or controversies, of whatsoever character, arising in any manner or between any parties or persons in connection with the Fund or the operation thereof." (*See id.* at art. V, § 2.) Specifically, the Trust Agreement provides:

> All questions or controversies, of whatsoever character, arising in any manner or between any parties or persons in connection with the Fund or the operation thereof, whether as to any claim for any benefits preferred by any participant, beneficiary, or any other person, or whether as to the construction of the language or meaning of the rules and regulations adopted by the Trustees or of this instrument, or as to any writing, decision, instrument or accounts in connection with the operation of the Trust Fund or otherwise, shall be submitted to the Trustees, or to a committee of Trustees, and the decision of the Trustees shall be binding upon all parties or persons dealing with the Fund or claiming any benefit thereunder. The Trustees are vested with discretionary and final authority in making all such decisions, including Trustee decisions upon claims for benefits by participants and beneficiaries of the Pension Fund and other claimants, including Trustee decisions construing plan documents of the Pension Fund.

(*See* Tr. Agmt. at art. V, § 2.) Although this provision does not specifically list questions regarding employer contributions among the areas over which the Trustees have discretionary authority, the language used is sufficiently broad to grant the Trustees discretionary authority in deciding matters related to employer contributions. The language, moreover, is sufficiently clear

9

and unequivocal to put a participating employer on notice that the Trustees have discretionary authority to resolve disputes regarding, among other things, its contributions to the Fund.

Under ERISA, trustees owe a duty to a plan's participants and beneficiaries to assure the financial integrity of the plans by, among other things, "holding employers to the full and prompt fulfillment of their contribution obligations." *See Central Transport, Inc.,* 472 U.S. at 574, 105 S. Ct. 2833, 86 L. Ed. 2d 447. In addition to protecting the interests of the plan's participants and beneficiaries, trustees of multiemployer plans also must balance the interests of multiple participating employers (and unions), each of which has an interest in the collection of proper contributions from other employers. *See id.* at 575. Accordingly, as the Supreme Court has recognized, "ERISA clearly assumes that trustees will act to ensure that a plan receives all funds to which it is entitled, so that those funds can be used on behalf of participants and beneficiaries . . . ." *See id.* at 572. In light of the Trustees' responsibility to ensure that the Fund receives proper contributions from employers and the Trust Agreement's grant of discretionary authority to the Trustees to decide "[a]ll questions or controversies, of whatsoever character, arising in any manner or between any parties or persons in connection with the Fund or the operation thereof," the Court finds it appropriate to apply the arbitrary and capricious standard to its review of the Trustees' determination that Pepsi's contribution obligations for the Massillon location continued until January 19, 2014.[4]

B.  **Conflict of Interest Analysis**

Even when arbitrary and capricious review applies, courts must take into consideration whether ERISA trustees were operating under a conflict of interest in reviewing the trustees' determinations. *See Firestone,* 489 U.S. at 115, 109 S. Ct. 948, 103 L. Ed. 2d 80 ("Of course, if

---

[4] The Court makes no comment about whether the Trust Agreement's broad grant of discretionary authority would trigger arbitrary and capricious review with respect to other determinations the Trustees made.

10

a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion." (alteration in original) (quoting Restatement (Second) of Trusts § 187, cmt. d (1959))); *Metropolitan Life Ins. Co. v. Glenn,* 554 U.S. 105, 117, 128 S. Ct. 2343, 171 L. Ed. 2d 299 (2008) (same). The importance of the conflict of interest in the court's analysis depends on the severity of the conflict and likelihood that it affected the trustees' determination. *See Glenn,* 554 U.S. at 117, 128 S. Ct. 2343, 171 L. Ed. 2d 299; *Raybourne v. Cigna Life Ins. Co. of N.Y.,* 700 F.3d 1076, 1082 (7th Cir. 2012) ("[A] conflict may carry more weight when the 'circumstances suggest a higher likelihood that it affected the benefits decision . . . .'" (quoting *Glenn*)). In other words, while "[t]he correct standard of review to be applied . . . remains the arbitrary and capricious standard, . . . one of the factors that must be taken into account in applying that standard is any conflict of interest." *Fischer v. Liberty Life Assur. Co. of Boston,* 576 F.3d 369, 376 (7th Cir. 2009); *Dennison v. MONY Life Retirement Income Sec. Plan for Emps.,* 710 F.3d 741, 747 (7th Cir. 2013).

The Seventh Circuit has recognized that to determine the likelihood and severity of a conflict of interest, a party may need discovery to "identify a specific conflict of interest or instance of misconduct." *See Dennison,* 710 F.3d at 747. District courts have broad discretion in limiting and managing discovery into trustees' potential conflicts of interest. *See id.* In response to the Fund's summary judgment motion, Pepsi moved for discovery on, among other things, whether the trustees' conflicts of interest affected their decision. The Court granted Pepsi's motion in part, ruling that Pepsi should have the opportunity to engage in some discovery outside the administrative record. Until Pepsi completes this discovery, the Court cannot determine the

severity of the Trustees' conflict of interest, if any, or the likelihood that the conflict influenced the Trustees' decision.

The Court, therefore, cannot decide on the pleadings alone whether, in light of the Trustees' alleged conflict of interest, the Trustees' determination that Pepsi's contribution obligation continued until January 19, 2014 was arbitrary and capricious. The Court, however, may still grant Pepsi's motion for judgment on the pleadings if Pepsi will prevail even if no conflict of interest exists. As explained below, however, the Court cannot make that determination based on the pleadings alone.

## II. Determination on the Merits If No Conflicts of Interest Exist

The arbitrary and capricious standard is the "least demanding form of judicial review of administrative action." *Semien,* 436 F.3d at 812. Absent special circumstances such as fraud or bad faith, an ERISA trustee's decision "may not be deemed arbitrary and capricious so long as it is possible to offer a reasoned explanation, based on the evidence, for that decision." *Id.* (quoting *Trombetta v. Cragin Fed. Bank for Sav. Emp. Stock Ownership Plan,* 102 F.3d 1435, 1438 (7th Cir. 1996)). Rather, "[a] decision is arbitrary or capricious only when the decisionmaker has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence . . . or is so implausible that it could not be ascribed to difference in view or the product of . . . expertise." *Trombetta,* 102 F.3d at 1438 (internal quotations and citations omitted); *Semien,* 436 F.3d at 812.

The Court cannot say that the Trustees' determination that Pepsi's contribution obligations for the Massillon location continued until January 19, 2014 was arbitrary and capricious absent a conflict of interest. The Trust Agreement to which Pepsi agreed obligated

Pepsi to contribute to the Fund for the Massillon location for the entire term of the Old CBA (*see* Tr. Agmt. at art. III, § 7 ("An Employer is obliged to contribute to the Fund for the entire term of any collective bargaining agreement accepted by the Fund on the terms stated in that collective bargaining agreement . . . .")), and the Old CBA stated that it would remain in effect until January 19, 2013 and "from year to year thereafter unless written notice of desire to cancel or terminate the Agreement is served by either party upon the other at least sixty (60) days prior to the date of expiration." (*See* Old CBA at art. 37.) The Trustees found that the Old CBA continued in effect until January 19, 2014 because neither Pepsi nor the Union provided written notice of its desire to cancel or terminate the Old CBA more than 60 days before the Old CBA's expiration date on January 19, 2013. Specifically, the Trustees determined that the Union's November 1, 2012 letter did not express the Union's desire to cancel or terminate the Old CBA, and thus, it was not sufficient to trigger termination.

The Court cannot determine based on the pleadings that the Trustees' decision was arbitrary and capricious. Pepsi argues that the Union's November 1, 2012 letter clearly and unambiguously expressed the Union's desire to cancel or terminate the Old CBA. The matter, however, is not so straightforward. The Union did not state in its letter that it intended to cancel or terminate the Old CBA. Rather, the letter expressed the Union's "desire, intention and election to negotiate changes or revisions" in the Old CBA. (*See* 11/1/12 Ltr. at 1.) Although the letter references the Termination Clause of the Old CBA (Article 37) and the 60-day notice period required to provide notice of termination, such references alone do not clearly and unambiguously evidence an intention to terminate a CBA. *See Office & Professional Emp. Int'l Union, Local 95 v. Wood County Tel. Co.,* 408 F.3d 314, 315-16 (7th Cir. 2005) (letter expressing the union's "desire to reopen [the CBA] and to negotiate on wages, hours and

13

conditions of employment for a successor agreement" did not terminate the CBA, which, as a result, continued in effect under the CBA's evergreen clause).

In *Wood County Telephone Co.,* the Seventh Circuit considered whether a letter citing the CBA's termination provision and expressing the union's "desire to reopen [the CBA] and to negotiate on wages, hours, and conditions of employment for a successor Agreement" provided sufficient notice to terminate the CBA. The Seventh Circuit held that the union's use of the terms "reopen" and "negotiate" did not convey a desire to terminate the CBA on the expiration date. *See Wood County Telephone Co.,* 408 F.3d at 315-16. Instead, the Seventh Circuit found that the letter expressed the union's intention to engage in negotiations and allow the CBA to continue in effect during negotiations under the agreement's evergreen provision. *See id.* The Seventh Circuit stated parenthetically that the letter's quotation from the CBA's termination clause "might have been a ground to treat the letter as ambiguous[,]" but found that all of the extrinsic evidence regarding the letter's meaning supported a finding that the union did not intend its letter to terminate the existing CBA before the parties negotiated a new agreement. *See id.* at 316.

The Union's November 1, 2012 letter is similar to the union's letter in *Wood County Telephone Co.* Both letters reference the CBA's termination clause but do not explicitly state a desire to terminate or cancel the existing CBA. Instead, both letters state the union's desire to "negotiate" changes to the existing CBA. Accordingly, like in *Wood County Telephone Co.,* the Court cannot conclude on the face of the letter alone that it expressed the Union's intention to terminate or cancel the Old CBA.

Furthermore, because the administrative record regarding the Trustees' determination is outside the pleadings, the Court cannot determine at this stage in the proceedings whether the

14

Trustees failed to consider important factors or relied on factors that they should not have considered in making their determination. The Court, therefore, cannot conclude based on the pleadings alone whether the Trustees' determination was arbitrary or capricious.[5] This determination is better left to the summary judgment stage after Pepsi has had the opportunity to conduct discovery into the Trustees' alleged conflicts of interest and the impact any such conflicts may have had on the Trustees' determination.

## CONCLUSION

For the reasons explained above, the Court denies Pepsi's motion for judgment on the pleadings.

**Dated: August 5, 2014**  **ENTERED**

*/s/ Amy J. St. E*

**AMY J. ST. EVE**

**United States District Court Judge**

---

[5] The Court makes no comment regarding whether Pepsi can prevail if a conflict of interest exists. This determination necessarily depends on the outcome of discovery into the Trustees' conflicts of interest, the severity of any conflicts that may exist, and the likelihood that those conflicts interfered with the Trustees' decision.